## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **EARLETTA SMITH,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **C.A. NO. 4:06-cv-2586** |
| | § | **(JURY DEMANDED)** |
| **UNITED AUTO CREDIT** | § | |
| **CORPORATION, Individually and** | § | |
| **d/b/a General Investigations AND** | § | |
| **JESSIE SOTO, Individually and d/b/a** | § | |
| **I & R Solutions and d/b/a General** | § | |
| **Investigations,** | § | |
| | § | |
| *Defendants.* | § | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, EARLETTA SMITH ("Smith" or the "Plaintiff"), in the above styled cause, and complains of UNITED AUTO CREDIT CORPORATION, Individually and d/b/a General Investigations ("UACC") and JESSIE SOTO, Individually and d/b/a I & R Solutions and d/b/a General Investigations ("I&R") (UACC and I&R hereinafter collectively referred to as the "Defendants") as follows:

### I.

### PARTIES

1. At all pertinent times the Plaintiff was and is a natural person and domiciliary of Houston, Harris County, Texas.

2. Defendant United Auto Credit Corporation, Individually and d/b/a General Investigations, is a California corporation that has appeared and answered herein and may be served by serving its attorney of record, Tom Van Arsdel, Winstead, Sechrest, & Minick, P.C., 919 Milam, Suite 2400, Houston, Texas 77002.

3. Defendant Jessie Soto, Individually and d/b/a I & R Solutions and d/b/a General Investigations is an individual residing and doing business in the State of Texas and may be served by serving him at his principal place of business located at 6046 FM 2920, Suite 155, Spring, Texas 77379.

## II.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 in that this civil action arises under the laws of the United States, in particular under the provisions of the "Fair Debt Collection Practices Act" codified at 15 U.S.C. §§ 1692, *et seq*. This Court also has jurisdiction under 28 U.S.C. § 1337(a).

5. Defendants are also liable to the Plaintiff pursuant to the laws of the State of Texas, which claims may be brought under the supplemental and ancillary jurisdiction of this Court under 28 U.S.C. § 1367(a).

6. This Court has personal jurisdiction over the Defendants because they have established minimum contacts in the State of Texas.  UACC has offices in

the State of Texas, operates in the State of Texas, extends loans in the State of Texas, and performs collection actions in the State of Texas.   In addition, UACC performed the collection actions giving rise to the Plaintiff's claims in the State of Texas.   I&R is a Texas resident and does business in the State of Texas.

7.  This Court has venue under 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Texas.

## III.

## <u>BACKGROUND FACTS</u>

8.     Ms. Smith's ex-boyfriend, a Mr. Brian Brown, owned a car financed by UACC.  Apparently, the car note fell into default sometime after Ms. Smith quit dating Mr. Brown.

9.     Sometime in the early summer of 2006, UACC began calling Ms. Smith, asking her if she knew where the car was or where Mr. Brown lived.  Ms. Smith told UACC she did not know where the car was or where her ex-boyfriend was.  Ms. Smith had not been in touch with Mr. Brown and did not have any idea where he or the car is located.  UACC's agents continued to call Ms. Smith and ask her these same questions repeatedly over several months.

3

10.     On July 26, 2006, Ms. Smith received a phone message about the car from a person who identified himself as "Investigator Roberts."  He left a voice mail for Ms. Smith to call him back.  When Ms. Smith called back, the voice mail system that answered identified the place of business as "General Investigations" and further identified the specific department reached as the general investigations unit, theft fraud concealment division.  The voice menu asked Ms. Smith to enter the extension of the investigator she was trying to reach.  When Ms. Smith entered the extension that Investigator Roberts left, a man who identified himself only as "Investigator Roberts" answered.  Investigator Roberts told Ms. Smith that he had a writ for the car, which he said, translated into a warrant.  He further explained that his records showed her as the "first insured" on the car.  He represented that the bank had gone "straight to court" and obtained a writ.  Investigator Roberts told Ms. Smith that she had to surrender the car and make payment arrangements on the balance due on the loan.

11. Ms. Smith explained to Investigator Roberts that she never signed on the loan, that the car was not her car, that she no longer dated Mr. Brown, that she did not have his car, and that she did not know where his car was.  Investigator Brown told Ms. Smith that the writ had her name as the "first candidate" and had Mr. Brown as the "second candidate."  He told Ms. Smith "as of right now you need to get an attorney."

4

12.    Ms. Smith continued to dispute the debt and tried to explain to Investigator Roberts that she did not have any information about the car or Mr. Brown's whereabouts, but Investigator Roberts told her that as long as her name was "on the insurance" she was responsible.  He went further to tell her that her was only giving her 24 hours to "get her name off the insurance" so that he could "gear the investigation towards" Mr. Brown.  Investigator Roberts stressed that at that time the "case was against" Ms. Smith.  Ms. Smith told Investigator Roberts that she did not have insurance on the car in her name, and Investigator Roberts told her that he was going to call at that moment to confirm that and would "go from there."

13.    Ms. Smith told Investigator Roberts not to call her back again at her workplace, because she was not allowed to take those calls at her job.  Investigator Roberts told Ms. Smith that he was not a collector and that if he could not talk to her on the phone he would "come to her job with police present and talk to her in front of everybody."  Ms. Smith told Investigator Roberts that her understanding of the law was that he could not call or come to her job.  At this point Investigator Roberts became irate and abusive to Ms. Smith.  He told her repeatedly that he was not a collector.  He told her that he could call her "wherever the damn place" he wanted to call her.  He told her that she was "impeding his investigation" and that he was going to "press charges."  When Ms. Smith tried to interject comments, he

5

told her "I am not a collector; you're dealing with the DA ma'am." He stated "we don't go by those policies. We are not a collector. We can call you as many times as we feel like calling you."

14.    Ms. Smith continued to tell Investigator Roberts not to come to her job or call her back at her job. Investigator Roberts, even more agitated and abusive, told Ms. Smith he was going to press charges and stated "I will pick you up today if you keep giving me shit over the phone." He told Ms. Smith she had a "bad attitude" and told her "we will pick you up and by the time we are through with you, you will have spent millions of dollars on attorneys." Investigator Roberts ended the call by telling Ms. Smith "if we don't get the car within 24 hours we are going to pick one of you guys up. That's it. Because you are on the insurance."

15.    Ms. Smith called United Auto's main phone number and spoke with the representative who had called her numerous times over the past months. That representative told Ms. Smith that Mr. Brown's account had not been referred to a third party company for collection, but was being collected in-house by United Auto Credit.

16.    UACC claims that it hired I&R as its collection agent and that Investigator Roberts was I&R's employee.

6

## IV.

## CLAIMS

### Agency and Ratification

17.     UACC gave express, implied, or apparent authority to I&R, and at all times, I&R acted as UACC's agent in connection with the collection of the alleged debt at issue.  UACC ratified I&R's conduct and actions in connection with the collection of the alleged debt at issue.

### A.  Violations of the FDCPA

18.     Ms. Smith is a consumer as that term is defined by 15 U.S.C. § 1692a(3).  The Defendants are debt collectors as that term is defined by 15 U.S.C. § 1692a(6).  In particular, UACC is a debt collector, because UACC used a name other than its own name in the process of collecting its debts, which indicated that a third person was collecting the debt.

### 1.  Harassment or Abuse:  15 U.S.C. § 1692d

19.     The Defendants engaged in conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiff in violation of 15 U.S.C. §1692d(2) by:  (a) threatening the use of violence or other criminal means to harm the physical person, reputation, or property of the Plaintiff and (b) using obscene or profane language or language the natural consequence of which was to abuse the Plaintiff.  In particular, the Defendants told Plaintiff that it had a writ in her name

7

which translated into a warrant for her arrest, that she would be confronted at her job by the police "in front of everybody," and that she would be pick up and arrested.  The Defendants' representative also cursed at the Plaintiff on numerous occasions.

20.    The Defendants' conduct was the direct cause of damages to the Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff now sues.

## 2. False or Misleading Representations:  15 U.S.C. § 1692e

21.    The Defendants used false, deceptive, or misleading representations or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692e as follows:

(a) Making a false representation or implication that the Defendants were vouched for, bonded by, or affiliated with the United States or any State in violation of 15 U.S.C. § 1692e(1).

(b) Making a false representation of services rendered by the Defendants in violation of 15 U.S.C. § 1692e(2)(B).

(c) Representing or implying that nonpayment of the debt will result in the arrest or imprisonment of the Plaintiff in violation of 15 U.S.C. § 1692e(4).

(d) Making threats to take legal actions against the Plaintiff that could not legally be taken by the Defendants or that were not intended to be taken by the Defendants in violation of 15 U.S.C. § 1692e(5).

(e) Representing or implying that the Plaintiff committed a crime or other conduct to disgrace the Plaintiff in violation of 15 U.S.C. § 1692e(7).

(f) Using false representations or deceptive means to collect or attempt to collect the debt from the Plaintiff in violation of 15 U.S.C. § 1692e(10).  Specifically, the Defendants represented to the Plaintiff

that it had a warrant out for her arrest and she would be arrested at her job in front of everybody.

(g) The failure to disclose in the initial communication with the Plaintiff that the Defendants were attempting to collect a debt and that any information obtained would be used for that purpose in violation of 15 U.S.C. § 1692e(11).

(h) Using a business, company or organization name other than the true name of the debt collector's business, company, or organization in violation of 15 U.S.C. § 1692e(14).

22.     The Defendants' conduct was the direct cause of damages to the Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff now sues.

### 3.  Failure to Validate Debt:  15 U.S.C. § 1692g.

23.     The Defendants failed to send the Plaintiff, within 5 days after the initial communication, a written notice describing the amount of the debt, the name of the creditor to whom the debt is owed, a statement regarding the Plaintiff's right to dispute the debt, and a statement that the Plaintiff may request verification of the debt.

24.     The Defendants' conduct was the direct cause of damages to the Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff now sues.

### 4.  Statutory Damages under 15 U.S.C. § 1692k(a)(2)(A).

25.     As a result of the Defendants' violations, the Plaintiff is entitled to an award of statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in addition

to any actual damages.

### 5. Costs of Litigation and Attorney's Fees

26.     The Plaintiff has been forced to hire the attorneys whose names appear below to pursue those claims on their behalf.  The Plaintiff seeks an award of her costs of this action, including but not limited to reasonable attorneys' fees pursuant to 15 U.S.C. §1692k(a)(3).

### B.  Violations of the Texas Collection Practices Act

27.     The Defendants' conduct constitutes violations of the Texas Collection Practices Act, codified in the Texas Finance Code.  The Plaintiff is a consumer as that term is defined by Tex. Fin. Code, § 392.001(1).  The Defendants are a debt collector as that term is defined by Tex. Fin. Code, § 392.001(6).

### 1. Threats or Coercion:  Tex. Fin. Code, § 392.301

28.     The Defendants' actions and conduct constitute violations of Texas Finance Code, § 392.301, specifically:

      (a) accusing falsely or threatening to accuse falsely a person of fraud or any other crime;

      (b) threatening that the debtor will be arrested for nonpayment of a consumer debt without proper court proceeding;

      (c) threatening to file a charge, complaint, or criminal action against a debtor when the debtor has not violated a criminal law; and,

      (d) threatening to take an action prohibited by law in violation of Section 392.301(a)(8).

29.     The Defendants' conduct was the direct cause of damages to the Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff now sues.

### 2. Harassment and Abuse:  Tex. Fin. Code, § 392.302

30.     The Defendants' actions and conduct constitute violations of Texas Finance Code, § 392.302, specifically using language intended to abuse unreasonably the hearer or reader in violation of Section 392.302(2).

31.     The Defendants' conduct was the direct cause of damages to the Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff now sues.

### 3.  Fraudulent, Deceptive, or Misleading Representations: Tex. Fin. Code, § 392.304

32.     The Defendants' actions and conduct constitute violations of Texas Finance Code, § 392.304, as follows:

(a) Using a name other than the true business or professional name or the true personal or legal name of the debt collector while engaged in debt collection in violation of Section 392.304(a)(1)(A).
(b) Misrepresenting the character, extent, or amount of the Plaintiff's consumer debt, or misrepresenting the Plaintiff's consumer debt's status in a judicial or governmental proceeding in violation of Section 392.304(a)(8).
(c) Representing falsely that a debt collector is affiliated with, or is an instrumentality, agent, or official of, the State of Texas or any agency of federal, or local government in violation of Section 392.304(a)(9).

11

    (d) Representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business in violation of Section 392.304(a)(14).

    (e) Representing that a consumer debt is being collected by an independent, bona fide organization in the business of collecting past due accounts when the debt is being collected by a subterfuge organization under the control and direction of the person who is owed the debt in violation of Section 392.304(a)(18).

    (f) Using any false representation or deceptive act in connection with the collection of a debt in violation of Section 392.304(a)(19).

33.    The Defendants' conduct was the direct cause of damages to the Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff now sues.

### 4.  Use of Independent Debt Collector

34.    UACC used I&R as a debt collector despite actual knowledge that I&R repeatedly or continuously engaged in acts or practices that are prohibited by Chapter 392 of the Texas Finance Code, in violation of Tex. Fin. Code, § 392.306.

35.    UACC's conduct was the direct cause of damages to the Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff now sues.

### 5.  Costs of Litigation and Attorney's Fees

36.    The Plaintiff has been forced to hire the attorneys whose names appear below to pursue those claims on their behalf.  The Plaintiff seeks an award of her costs of this action, including but not limited to reasonable attorneys' fees

pursuant to Tex. Fin. Code, § 392.403(b).

## C.  Violations of the Texas Deceptive Trade Practices Act

37.    Under Tex. Fin. Code, § 392.404(a), a violation of Chapter 392 of the Texas Finance Code is a deceptive trade practice under Subchapter E, Chapter 17, Texas Business & Commerce Code, and is actionable under that subchapter. UACC committed violations of Chapter 392 of the Texas Finance Code, and thus committed violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code, § 17.50.

38.    The Defendants' conduct was the direct cause of damages to the Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff now sues.

39.    The Defendants' conduct was committed knowingly and intentionally, and the court should award additional damages pursuant to Tex. Bus. & Comm. Code, § 17.50(b)(1) and (h).

40.    The Plaintiff has been forced to hire the attorneys whose names appear below to pursue those claims on their behalf.  The Plaintiff seeks an award of her costs of this action, including but not limited to court costs and reasonable and necessary attorneys' fees pursuant to Tex. Bus. & Comm. Code, § 17.50(d).

## D.  Intentional Infliction of Emotional Distress

41.    The Defendants' conduct constitutes intentional infliction of emotional distress.  Defendants made calls threatening to have Plaintiff arrested at her job in front of everybody and put her in jail.  The Defendants' actions and threats were all calculated at intentionally inflicting emotional distress upon the Plaintiff so that she would pay the debt in order to make the calls stop.  The Defendants' actions in doing this were intentional or reckless, their conduct was extreme and outrageous, their actions caused the Plaintiff emotional distress and the Plaintiff's resulting emotional distress was severe.

42.    As a direct and proximate result of the acts of the Defendants, the Plaintiff has been damaged in a sum in excess of the minimum jurisdictional limits of the court.  Moreover, the Defendants' actions were intentional or reckless, and the Plaintiff hereby sues for exemplary damages in an amount far in excess of the minimal jurisdictional limits of this Court.

## E. Invasion of Privacy by Way of Intrusion

43.    The Defendants' conduct constitutes an invasion of the Plaintiff's privacy by way of intrusion, in that the Defendants intentionally intruded upon the solitude of the Plaintiff or her private affairs in a way that was or would have been highly offensive to a reasonable person.  The Defendants' intrusion was unreasonable, unjustified, or unwarranted.

14

44.     As a direct and proximate result of the acts of the Defendants', the Plaintiff has been damaged in a sum in excess of the minimum jurisdictional limits of the court.  Moreover, the Defendants' actions were intentional or reckless, and the Plaintiff hereby sues for exemplary damages in an amount far in excess of the minimal jurisdictional limits of this Court.

## F.  Negligence of UACC

45.     UACC had a duty to use reasonable and ordinary care, or the care that a reasonable creditor would or should exercise, in hiring, training, and supervising its collection agents.  UACC breached that duty of care by failing to exercise reasonable and ordinary care or the care that a reasonable creditor would or should exercise in hiring, training and supervising its collection agents.  The conduct of UACC in breaching its duty of care has proximately caused damages to the Plaintiff, and the Plaintiff has been harmed as a proximate result.

46.     As a direct and proximate result of the acts of UACC, the Plaintiff has been damaged in a sum in excess of the minimum jurisdictional limits of the court for which she now sues.

15

## V.

## <u>JURY DEMAND</u>

47.    The Plaintiff demands a trial by jury on all issues in this case.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, EARLETTA SMITH, respectfully requests that the Defendants, UNITED AUTO CREDIT CORPORATION, Individually and d/b/a General Investigations and JESSE SOTO, Individually and d/b/a I&R Solutions and d/b/a General Investigations, be cited to appear, and that after trial to a jury the Plaintiff be awarded judgment against the Defendants, jointly and severally, for the following:

1.    Actual damages;

2.    Additional, punitive, or exemplary damages;

3.    statutory damages not to exceed $1,000.00;

4.    Prejudgment and post judgment interest as allowed by law;

5.    Reasonable and necessary attorney's fees;

6.    Costs of Court; and,

7.    Such other relief, both equitable and at law, to which the Plaintiff may show herself entitled.

16

Respectfully submitted,

**WAUSON ♦ PROBUS**


By:___/s/  Matthew B. Probus___
       **Matthew B. Probus**
       TBA# 16341200

One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
(281) 242-0303
(281) 242-0306  (Facsimile)
mbprobus@w-plaw.com

*ATTORNEYS FOR PLAINTIFF,*
*EARLETTA SMITH*

<u>**CERTIFICATE OF SERVICE**</u>

    I hereby certify that a true and correct copy of the foregoing has been forwarded by electronic means to the Defendant's counsel, Lindsey Simmons, at lsimmons@winstead.com, on this the 10th day of October 2007.



      ____//s// Matthew B. Probus___
      Matthew B. Probus

17